**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE DANIEL CABREJA, JR., Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-4080** |
| **CITY OF PHILADELPHIA, *et al.*, Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.** **SEPTEMBER 1, 2026**

*Pro se* Plaintiff Jose Daniel Cabreja, Jr., commenced this civil action by filing a Complaint pursuant to 42 U.S.C. § 1983, naming as Defendants: the City of Philadelphia; the Curran-Fromhold Correctional Facility ("CFCF"); the Philadelphia Police Department; the Cinnaminson, New Jersey Police Department; the Philadelphia Parking Authority ("PPA"); an "unknown towing company" contracting with PPA; numerous individuals employed by those entities, some identified by name and others listed as "unknown"; and his own mother, Sonia Amaro (*See generally* ECF No. 1.) Cabreja has amended his complaint multiple times, and the Court understands the Second Amended Complaint ("SAC") (ECF No. 8) as the current operative complaint in this action. Cabreja also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Cabreja's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 10) and dismiss the SAC with leave to amend.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Cabreja alleges that on December 28, 2025, Officers Price, Officer Santos and his mother

[1] The facts set forth in this Memorandum are taken from Cabreja's Second Amended Complaint (ECF No. 8). The Court adopts the pagination assigned to all filings by the CM/ECF docketing

Sonia Amaro "conspired to detain" him and "held [him] under duress" for three hours, but "no arrest occurred." (SAC at 3.) He asserts that, "[d]uring those three hours, his five-year-old son was held against his will and withheld from [Cabreja]." (*Id.*) He states no other facts about this incident, other than that he previously filed a lawsuit concerning these events (*see id.*), which the Court understands as a reference to *Cabreja v. Officer Price*, No. 25-7402 (E.D. Pa.), which was dismissed for failure to prosecute.

Cabreja alleges that he was arrested on February 2, 2026, by "Unknown Officers 1-10." (SAC at 3.) He asserts that there was no probable cause for his arrest, and that the officers "broke the passenger side window of his truck," and "conducted a warrantless search of the truck." (*Id.* at 3-4.) Cabreja asserts that he was held for five days at CFCF and, during that time, "he was denied paper, pen, web access, and basic communication tools. He was locked up without being proven guilty, in violation of the presumption of innocence." (*Id.* at 4.) Publicly available state court records show that criminal charges against Cabreja for driving under the influence are pending in the Philadelphia Court of Common Pleas, with an offense date of February 2, 2026, in which a modification of bail was granted on February 6, 2026. *See Commonwealth v. Cabreja*, No. MC-51-CR-0001960-2026 (M.C. Philadelphia).

Cabreja asserts that his "truck was impounded," and that "over $10,000 in tools were stolen" from the truck. (SAC at 4.) He alleges that a "third-party towing company (acting for PPA) raided the truck, causing additional property loss." (*Id.*) He states that "PPA responded to a claim with a letter that deliberately misspelled [Cabreja]'s name." (*Id.*) He further asserts that

---

system. Grammar, spelling, and punctuation errors are cleaned up where necessary. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

on January 5, 2026, he had filed an "Affidavit of Status" with the Secretaries of State of the United States and Pennsylvania, which "rescinded all prior contracts (driver's license, vehicle registration, parking agreements) and declared his non-citizen national status," and that his Affidavit "has not been rebutted." (*Id.*) He states that, "[n]evertheless, PPA and PennDOT continue to issue tickets and prosecute [him]." (*Id.*)

Cabreja then alleges that:

> Approximately two weeks before this complaint, two police administrators appeared at the plaintiff's home without notice or explanation. The plaintiff learned of the visit from a neighbor. The Clerk of Court rejected two of the plaintiff's prior filings without valid legal basis. Police reports filed with Cinnaminson, NJ Police and Philadelphia Police have received no response.

(*Id.*) Cabreja provides no other details about these incidents, other than cross-referencing "Exhibits I and J," (*id.*), which the court understands as referring to exhibits attached to his initial Complaint that appear to be receipts for his police reports (*see* ECF No. 1 at 33-34).

The SAC also includes facts about events that occurred after the filing of Cabreja's initial Complaint. He alleges that on June 23, 2026, his "truck was repossessed by International Recovery Systems, acting as agent for the financier." (SAC at 4.) He asserts that he has never received "an invoice, a bill, or any notice of default," and that "[n]o communication was received regarding the alleged $900 balance." (*Id.*) Cabreja does not identify the "financier" in the body of the SAC, but the court understands him to refer to Westlake Financial, named as a Defendant in the caption of the SAC.[2] (*See id.* at 1, 10.) Cabreja states that his "obligation is disputed and the underlying contract is void for fraud." (*Id.* at 5.) He "called the financier three times" on the date of the repossession, but "the financier demanded full payment or full repossession." (*Id.*)

---

[2] Cabreja subsequently filed a document titled "Complaint to Enjoin Resale of Repossessed Vehicle," in which he explains that on October 29, 2025, he "purchased an F-150 XLT 2104 from Delco Auto Sales," and that Westlake Financial "provided financing for [his] purchase of the vehicle, and in return took a security interest in the vehicle." (ECF No. 18 at 3.)

He states that he "sent certified mail . . . inquiring about the balance and demanding verification" the week prior to filing the SAC, "but received no response." (*Id.*)

Cabreja alleges that, also on June 23, 2026, he "contacted International Recovery Systems and arranged to retrieve his personal property" from the truck, but that when he arrived, an employee named Ron "personally refused to grant access," because "the paperwork" Cabreja had "lacked 'Jr.' on [Cabreja]'s name," which the Court understands as a reference to the letter in which he alleges PPA misspelled his name. (*See id.* at 4-5.) He claims that the unidentified "appointment setter" for International Recovery Systems "conspire[ed] with Ron and the financier to deny access" to his personal property. (*Id.* at 5.)

Finally, Cabreja states that on an unspecified date, he "attempted to record a legal document with the County Recorder's Office," although he does not state which county. (*Id.*) He asserts that "the document was signed and notarized without defect," and yet, "[a] public servant (the clerk) refused to record it, stating it was 'not a proper document.'" (*Id.*) He states that "the clerk gave [Cabreja] her name," but he does not include that name in the body of the SAC; it appears from the caption that this individual may be Sandy Thomas. (*See id.* at 1, 5.)

Cabreja asserts twenty-nine claims against various defendants based on the above events. (*See id.* at 6-7.) He seeks over $60 million in damages and various forms of declaratory and injunctive relief. (*See id.* at 7-9.)

## II. STANDARD OF REVIEW

Because it appears that Cabreja is incapable of paying the fees to commence this civil action, the Court will grant leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Cabreja's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678.

As Cabreja is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the

actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (cleaned up). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III. DISCUSSION

### A. Rule 8 Pleading Deficiencies

The SAC fundamentally fails to comply with Rule 8, and is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring 'every conceivable claim against every conceivable defendant.'" *Anderson v. First Premier Bank,* No. 25-5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quoting *Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017)). Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons." *Id.* (quoting *Talley,* 2017 WL 413069, at *2).

> For one thing, complaints like [that] . . . unfairly burden defendants and courts. The plaintiff who files such a shotgun complaint shifts onto the defendant and the

> court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant or the Court. It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
>
> It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it. In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim.

*Anderson,* 2025 WL 3214776, at *6 (internal quotations and citations omitted). Cabreja names a slew of Defendants based on events that began on December 28, 2025, and continued at least through June 23, 2026, and that appear unrelated in any way other than that they involved Cabreja himself. He makes vague references to contracts that he believes are void and filings he attempted to make with public agencies that were rejected or ignored. While doing so, he employs language commonly associated with the so-called "sovereign citizen" movement. As the Court explained to Cabreja in a prior Order: "arguments and statements . . . such as asserting in contradictory fashion that this Court has federal question jurisdiction over his claims but no jurisdiction over him, and providing "Power of Attorney" and "Affidavit of Status" documents claiming to be independent of the laws the United States . . . have no conceivable validity in American law and are patently frivolous." (ECF No. 4 at 2 n.1 (first citing ECF No. 1 at 3, 12-29; then quoting *United States v. Crawford*, No. 18-3149, 2022 WL 2712868, at *1 (3d Cir. July 13, 2022)) (internal quotation marks omitted).) As the Court also stated in that Order, "these sovereign-citizen theories should be rejected summarily, however they are presented." (*Id.* (quoting *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) (citation modified).)

Moreover, none of Cabreja's allegations as to any individual episode he describes are supported by sufficient factual detail to state a claim to relief. For example, he asserts that

Officers Santos and Price "conspired to detain" him for three hours, with the assistance of his mother, but provides no other facts. (SAC at 3.) He alleges that he was "arrested . . . on false charges" and without probable cause by ten unnamed officers, who also "conducted a warrantless search of [his] truck." (*Id.*) And he states that a county clerk rejected a document he attempted to record, in a manner that "was arbitrary, capricious, and without lawful basis." (*Id.* at 5.) But these conclusory statements are insufficient to state a claim to relief. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). He also makes passing reference to the federal RICO statute and asks for treble damages (SAC at 7-8) but fails to allege how any Defendant is liable under that law.

**B. Constitutional Claims**

To the extent that Cabreja intends to assert claims for violations of his constitutional rights, 42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

To the extent that Cabreja intends to assert claims for false arrest, false imprisonment, or an illegal search and seizure, he falls far short of stating a claim to relief. Such claims arise from the Fourth Amendment. *See* U.S. Const. amend. IV; *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). The Fourth Amendment requires arrests, detentions, and prosecutions to be supported by probable cause, and that searches and seizures be reasonable. *See T.L.O.*, 469 U.S. at 337; *Harvard v. Cesnalis*, 973 F.3d 190 202-03 (3d Cir.

2020). To state a false arrest claim under § 1983, a plaintiff must plausibly allege that: (1) there was an arrest; and (2) the arrest was made without probable cause. *See Covington v. Plymouth Twp. Police Dep't*, 779 F. Supp. 3d 509, 523 (E.D. Pa. 2025). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

"To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) (citation omitted); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that [the defendant officer] lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment and malicious prosecution claims because plaintiff failed to assert a plausible claim of lack of probable cause where plaintiff, while alleging that he was twice arrested, did not have drugs in his possession, did not break the law and the police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the

Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false).

When an arrest is conducted without a warrant, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). This determination may occur "either before or promptly after arrest," *id.* at 125, and a probable cause determination conducted within forty-eight hours of arrest will generally satisfy the Fourth Amendment, *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). In other words, "[i]n the ordinary criminal case, arrest and detention of a suspect is reasonable if it is supported by probable cause, as determined by the judge who either issues an arrest warrant or conducts a preliminary hearing." *Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir. 2011) (citing *Gerstein*, 420 U.S. at 111-14).

Cabreja does not plead the circumstances surrounding the events of December 28, 2025, or February 2, 2026, with any specificity. To the extent that his claims concerning the events of February 2 relate to charges pending against him in the Philadelphia Municipal Court in case number MC-51-CR-0001960-2026, it appears that he was arraigned on those charges the same day and subsequently had multiple bail hearings. As noted above, his conclusory statements that he was unreasonably searched or detained or arrested without probable cause are insufficient to state a claim to relief, in the absence of any facts about the circumstances of those events.

Cabreja also names CFCF as a Defendant, and alleges that while he was held there for five days as a pretrial detainee, he was denied various amenities. However, any § 1983 claim against CFCF must be dismissed as frivolous because a jail is not a "person" under Section 1983. *See Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citation omitted). Cabreja names no individuals who could be considered

"persons" in reference to any claims related to his conditions of confinement at CFCF.

Cabreja also names as Defendants the City of Philadelphia, the Philadelphia Police Department, and PPA, as well as the Cinnaminson Police Department. Neither of the police departments is a proper defendant, so they will be dismissed. *See Martin v. Red Lion Police Dep't*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality). To state a claim against the City of Philadelphia (or Cinnaminson) or the PPA, he must allege sufficient facts to support a theory of municipal liability. *See Monell v. Dep't of Social Servs*., 436 U.S. 658, 694 (1978); *see also King v. Philadelphia Parking Auth.*, 97 F. Supp. 3d 649, 653 (E.D. Pa. 2015), *aff'd sub nom. King v. City of Philadelphia*, 654 F. App'x 107 (3d Cir. 2016) (*per curiam*). To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.[3] *See Monell*, 436 U.S. at 694 (1978). In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). The plaintiff must plead "an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Est. of Roman*, 914 F.3d at 798 (citation omitted).

Cabreja does not allege that any policy or custom of the City of Philadelphia or any of its

---

[3] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

sub-units cause his injuries, so he has failed to state a claim for municipal liability.[4] Moreover, his claims related to the PPA and the Pennsylvania Department of Transportation ("PennDOT") appear to be based entirely on his "Affidavit of Status," in which he purported to "rescind[] all prior contracts (driver's license, vehicle registration, parking agreements) and declared his non-citizen national status." (SAC at 4; *see also id.* at 6.) As noted above, that document and these arguments are a legal nullity, and the United States Court of Appeals for the Third Circuit has specifically rejected sovereign-citizen arguments against the PPA. *See Sorrells v. Philadelphia Police Dep't*, 652 F. App'x 81, 83 (3d Cir. 2016) (*per curiam*). In sum, Cabreja has failed to state any claim to relief under federal law.

### C. State Law Claims

As for his claims related to the repossession of his truck and his subsequent inability to retrieve personal property, these appear to be state tort claims. (*See, e.g.*, SAC at 5 (referring to "conversion" and "trespass to chattels").) Although he also mentions "violations of his rights," he does not plead that Internation Recovery Systems, the "financier," or any employees were acting under color of state law. (*See id.*) However, Cabreja has not pleaded any viable federal claims, so he must establish an independent basis for the Court's jurisdiction over his state law

[4] Cabreja also cites numerous criminal statutes and appears to complain that two police departments did not follow up on reports he filed. Courts, including the United States Court of Appeals for the Third Circuit, routinely dismiss claims seeking to impose civil liability under state criminal statutes, because they generally provide no private cause of action. *See, e.g.*, *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code). Moreover, an individual citizen "generally has no due process right to police protection or enforcement of state laws," and does not have a "judicially cognizable interest in the prosecution or nonprosecution of another." *Fullman v. City of Philadelphia*, No. 23-3073, 2024 WL 1637550, at *2 (3d Cir. Apr. 16, 2024) (citing, *inter alia*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *Burella v. City of Philadelphia*, 501 F.3d 134, 146 (3d Cir. 2007)).

claims. *See Group Against Smog & Pollution*, 810 F.3d at 122 n.6; *Lincoln Ben. Life Co.*, 800 F.3d at 105 (3d Cir. 2015).

Under 28 U.S.C. § 1332(a), a district court has jurisdiction over a case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," which requires "complete diversity between all plaintiffs and all defendants . . . mean[ing] that, . . . no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Ben. Life Co.*, 800 F.3d at 104 (internal quotation marks and citations omitted); *see also Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 870 (3d Cir. 2022) (stating that, "as its name indicates," diversity jurisdiction requires that opposing parties be citizens of diverse states). It is the plaintiff's burden to establish diversity of citizenship. *See Haiying Xi v. Shengchun Lu,* 226 F. App'x 189, 190 (3d Cir. 2007) (*per curiam*) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met). Cabreja does not allege the citizenship of the parties to his state tort claims so he has not met his burden to establish the Court's jurisdiction.

**D. Leave to Amend, Joinder of Claims and Parties, and Piecemeal Pleading**

Despite the deficiencies identified above, in an abundance of caution, the Court will dismiss the SAC without prejudice and grant Cabreja leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that courts should grant leave to amend a defective pleading unless amendment would be inequitable or futile). However, not only must Cabreja cure the defects identified above, but he must also adhere to rules concerning joinder of claims and parties. Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has

against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024) (internal quotation marks omitted) (quoting *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014)). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Williams v. Miller*, No. 25-6293, 2026 WL 209815, at *8 n.12 (E.D. Pa. Jan. 27, 2026) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. Should he choose to amend, Cabreja should bear in mind that the Court may sever parties or claims that are unrelated to each other into separate cases. *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013) ("The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims.").

Finally, the Court notes that Cabreja has filed numerous amendments or supplements to his original Complaint, many of which cross-reference to his other pleadings or exhibits that

have been filed across the docket. The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"); *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

The Court will grant Cabreja an opportunity to amend. To do so, he must file one single document that contains properly joined claims, states all factual details supporting those claims, and includes any exhibits upon which he intends to rely in one complete, coherent submission.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Cabreja leave to proceed *in forma pauperis* and dismiss the SAC on statutory screening, pursuant to 28 U.S.C. § 1915. Cabreja may file a third amended complaint. An appropriate order follows.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**